IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

DONNA "MICHELLE" BOWMAN,

    Plaintiff,

v.

GREGORY YOUNGS,
DEPUTY KEHL,
DEPUTY CUSTODIO,
PETRINA PESAPANE,
HILLARY FEIERSTEIN,
and the BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY,

    Defendants.

## COMPLAINT FOR DAMAGES

Plaintiff, Donna Michelle Bowman ("Michelle" Bowman), by and through her attorney, Raymond K. Bryant of the Civil Rights Litigation Group, PLLC, hereby states and alleges, as follows:

### INTRODUCTION

1. This is a civil rights action seeking damages for an unusual situation in which a mother was advised by the Jefferson County Sheriff's deputies to get a Protection Order restraining her daughter from contacting her, in order to curb her daughter's alcohol dependency problem, and then sent officers to arrest the daughter – while possessing constructive or actual knowledge that the PO had never been served.

1

2. Plaintiff's mother, Donna Bowman had previously been working with the Jefferson County Sheriff's Office to help her daughter through various mental health issues that had resulted in 911 calls. After continuing to experience difficulty, Ms. Bowman was advised by the Sheriff's Department that the only way to help her daughter was to exercise "tough love" and get a restraining order that would prevent her daughter from coming home while dependent on alcohol. Jefferson County Sheriffs had responsibility of serving the restraining order before it would become effective, but did not contact Plaintiff about it. Officers later came to the and arrested Plaintiff without any evidence that she had been served, and in spite of evidence demonstrating that she had not been served.

3. Ms. Bowman spent approximately seven (7) days in jail at the Jefferson County Jail, suffering in psychological despair from the arrest, from exacerbated mental health conditions without medication, and in physical pain from an untreated cellulitis infection on her nose that obviously required medical attention. Ms. Bowman was denied medical attention until she was finally released by a judge who recognized the lack of service to be fatal to the arresting officers' claim of the protection order violation.

## JURISDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States, pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred pursuant to 42 U.S.C. § 1331.

5. Venue is proper in the City and County of Denver, State of Colorado, because the incidents and resultant injuries to the Plaintiff giving rise to this action occurred in the Jefferson County, Colorado.

## PARTIES

6. Plaintiff incorporates paragraphs 1 through 6 herein by reference

7. Plaintiff Donna Michelle Bowman was at all times relevant to the claims set forth herein a resident of the State of Colorado.

8. Defendant Deputy Gregory Youngs (badge #1904), was, at all times relevant to the subject matter of this action, employed as a Police Officer by the Jefferson County Sheriff's Department and acting under color of law.

9. Defendant Deputy Khel is believed to have been Defendant Youngs' partner, and was, at all times relevant to the subject matter of this action, employed as a Police Officer by the Jefferson County Sheriff's Department and acting under color of law.

10. Defendant Deputy Custodio (badge #2317) was, at all times relevant to the subject matter of this action, employed as a Police Officer by the Jefferson County Sheriff's Department and acting under color of law.

11. Defendant Deputy Petrina Pesapane (badge #2222) was, at all times relevant to the subject matter of this action, employed as a Police Officer by the Jefferson County Sheriff's Department and acting under color of law.

12. Defendant Deputy Hillary Feierstein (badge #2206) was, at all times relevant to the subject matter of this action, employed as a Police Officer by the Jefferson County Sheriff's Department and acting under color of law.

13. Defendant Board of County Commissioners of Jefferson County, also known as "Jefferson County," is a county municipality established under the laws of

Colorado, and is ultimately responsible for promulgating policies and practices pertaining to the Jefferson County Sheriff's Office.

## FACTUAL BACKGROUND

14. Plaintiff incorporates all preceding paragraphs by reference.

15. Before July 24, 2015, Plaintiff Donna Michelle Bowman ("Michelle Bowman") had suffered severe emotional distress from a prior assault. She was prescribed a number of medications for severe anxiety, depression, PTSD, and violent and suicidal thoughts. She also attempted to self-medicate using alcohol.

16. Plaintiff's mother, Donna Bowman, attempted to help her several times, by providing a safe place for her daughter to stay and by attempting to get her mental health treatment.

17. Ultimately, Donna Bowman was told by Deputy Burgess, of the Jefferson County Sheriff's Department, that the only way to truly help her daughter was to request a restraining order against her to keep her daughter from coming back to her home while dependent on alcohol. At that point, he claimed, the Sheriff's Department could help her by seeking mental health treatment on her behalf.

18. On June 19, 2015, Donna Bowman sought and received a Protection Order ("PO") from a Jefferson County Court restraining her daughter from contacting her and/or coming within 100 yards of her home.

19. During the hearing, the judge explicitly told Donna Bowman that she should think about the PO before it came into effect. The Court told Donna Bowman that the PO would not become effective until it was served by the Jefferson County Sheriff's

4

Office, and that once it was served, the officers would escort Michelle Bowman out of the house because service of the PO would effectively evict her daughter from the home.

20.  The Court and/or Donna Bowman requested that the Jefferson County Sheriff's Office serve the PO on Michelle Bowman.

21.  Thereafter, Donna Bowman waited for the officers to come to her home to serve the documents, advise her daughter of the PO, and to evict her daughter, but the officers never made contact with Michelle Bowman regarding service of the PO.

22.  Upon information and belief, Jefferson County documented their possession of the Protection Order and lack of service of the Protection Order in the department's internal computer system and/or in the CCIC computer database.

23.  Donna Bowman never told her daughter about the Order, because she expected the officers to handle the legal matter. She deferred to the Sheriff's Department regarding how best to inform Michelle Bowman about the contents of the Order because she expected the officers to offer aid in conjunction with the Order.

24.  Michelle Bowman did not otherwise receive actual notice of the PO from any other source.

25.  On July 24, 2015, Jefferson County dispatched Defendant Officers Youngs and Kehl to the neighborhood to investigate a report of a woman crying on the corner.

26.  The officers arrived and found no one at the intersection. However, the department had documented concerns about Michelle Bowman's mental health issues from prior calls, so the officers went to the Bowman residence to investigate.

5

27. At the Bowman residence, the officers found Michelle Bowman and Donna Bowman in the back yard. Michelle Bowman was seen running away from Donna Bowman and curling up into the fetal position on the ground. Michelle Bowman reported to the officer that her mother "picks on her every day."

28. The Defendant officers performed an identity inquiry using a mobile computer system and discovered the PO restraining Michelle Bowman from contact with Donna Bowman and from the home.

29. Before making any arrest, the Officers were required to establish probable cause that the PO had been served on Michelle Bowman before she could have "knowingly" violated the Order, pursuant to the clear language in C.R.S. 18-6-803.5(3)(b).

30. Without possessing information that the PO had been served, the officers were required to serve and/or provide notice of the contents of the Protection Order, pursuant to C.R.S. 13-14-102(11).

31. The officers failed to conduct a reasonable inquiry to determine whether Michelle Bowman could have knowingly violated the PO by failing to inquire into whether the Order was ever served on her before that time and/or by ignoring obvious evidence that the PO had not been served on Michelle Bowman.

32. Upon information and belief, the officers would have had access to information known to the Sheriff's Department that the PO had not been served on Michelle Bowman.

33. Upon information and belief, the Defendant Officers ignored obvious computer entries in the police system and/or in CCIC associated with the Protection Order, which would have indicated to any reasonable person that the Sheriff's Department had possession of the PO to be served, and/or that it had not yet been served on Michelle Bowman.

34. During the arrest, Donna Bowman informed the officers that she was the protected party pertaining to the PO, and that the PO had never been served on her daughter.

35. Instead of serving the PO and/or otherwise informing Michelle Bowman about the terms of the PO, the officers arrested her and failed to provide her notice.

36. Michelle Bowman was detained for approximately seven (7) days in the Jefferson County Jail, until a County Court judge dismissed the case for lack of service of the Protection Order.

37. While being detained in the jail, Defendant Deputies Custodio, Perapene, and Feierstein were assigned to Plaintiff's cell block and were responsible for her custody and care.

38. During her detention, Michelle Bowman was told by jail officials that she could keep only one cup for water – either for drinking or for her contact lenses. Michelle Bowman had no way to keep her contact lenses lubricated over night and was forced to discard them. As a result, her vision was so poor that she could not read anything in the jail.

39. Michelle Bowman repeatedly requested access to critical mental health prescriptions to stabilize her mood and control violent and suicidal thoughts. Her requests were ignored by the detention officers.

40. Donna Bowman brought additional contact lenses and Michelle' Bowman's regiment of prescription medications to the jail, but jail officials failed and/or refused dispense them.

41. Michelle Bowman developed a serious cellulitis infection on the tip of her nose that was left untreated by the detention officers and was permitted to grow to the size of a grape, without treatment.

42. Michelle complained of her inability to see and read, her pain from the infection, the worsening condition of the obvious malignancy on her nose, and her mental health conditions, but was refused any type of accommodation or medical treatment.

43. The nasal infection grew more and more serious every day that it was left untreated, until Michelle experienced difficulty breathing and the infection spread from her nose toward her eye, partially blocking her already diminished vision.

44. Michelle Bowman complained of these concerns to jail staff, including Custudio and Pasapene, but her complaints fell on deaf ears. The officers ignored her complaints and the obvious signs of worsening and spreading infection.

45. By the fifth day of the seven-day detention, on or about July 28, 2017, Michelle Bowman was in distress and needed help. She called her mother for help regarding the infection, lack of medical treatment, and lack of medication.

46. Defendant officer Persapene heard about the telephone call made to her mother and recollected seeing or hearing about a Protection Order restraining Michelle Bowman from making such contact.

47. Defendants Custodio, Perapene, and Fierstein investigated the telephone call and the Protection Order.

48. Defendants Custodio, Persapene, and Fierstein knew or should have known from information readily available in their computer system, via Donna Bowman, and via Michelle Bowman, that the Protection Order, still, had not been served on Michelle Bowman, and that no Jefferson County Sheriff's deputy had provided her actual notice about the PO by that time. But the officers filed new charges of a second violation of the PO.

49. Before serving the summons, Defendant Persapene called Donna Bowman, who told Defendant Persapene that Michelle Bowman had not been served with the Protection Order and had been unlawfully detained up to that point. Donna Bowman also explained to the officer that Michelle Bowman needed her medications and medical treatment. Upon information and belief, Defendant Persapene relayed this information to the other investigating officers.

50. Defendants Custodio, Peraspene, and Fierstein listened to the audio recording of the call where Donna Bowman explained that the PO had not been served and was not yet in effect, that Michelle Bowman needed mental health medication to control her violent and suicidal thoughts, and that she needed medical treatment for the

9

infection that was worsening and causing Michelle Bowman unnecessary pain and emotional distress.

51. The Defendant officers ignored the requests and failed to provide Michelle Bowman any of her prescriptions or any type of medical attention.

52. After Michelle Bowman was released, she was finally permitted an opportunity to see a doctor regarding her nasal infection. Doctors were forced to prescribe her multiple forms of very aggressive, special antibiotics to address the late-stage infection, which had been complicated and grew worse because she was not treated earlier.

53. Michelle Bowman seeks damages for her wrongful arrest, loss of liberty, emotional distress, medical costs, and unnecessary pain and suffering.

## FIRST CLAIM FOR RELIEF
*42 U.S.C. § 1983 Fourth Amendment Violations* – **Wrongful Arrest and Detention**
*(Against Defendants Youngs and Kehl and the Board of County Commissioners of Jefferson County)*

54. Plaintiff hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the preceding Paragraphs of this Complaint.

55. Defendant Officers Youngs and Kehl arrested, detained and confined Plaintiff Bowman without possessing probable cause to believe that she had committed the crime of violation of a protection order.

56. Although a Protective Order had, indeed, been issued by the Jefferson County Court, it was not yet active. Ms. Bowman had not been served or otherwise provided actual notice about the Order and had no reason to believe that she could not be present at her mother's home.

57. The Jefferson County Sheriff's Department had been asked to serve the Protection Order and likely documented its possession of the Order and its lack of service within the shared police computer system and/or CCIC.

58. Moreover, the protected party identified in the temporary PO was Donna Bowman. She was present when Defendant officers Youngs and Kehl arrived and discovered the PO. She advised the officers of her status as the protected party and that Michelle Bowman had not been served with the Protection Order.

59. The Defendant officers unreasonably failed to investigate whether the Protection Order had been properly served, ignored readily available evidence indicating that the Protection Order had not been served, and ignored credible evidence from the Protected party indicating that the Order had not been served, before arresting Michelle Bowman.

60. The Defendant officers arrested Michelle Bowman without possessing probable cause pertaining to the second element of violation of a Protective Order, pursuant to Colorado Law in C.R.S. 18-6-803.5(3)(b).

61. On information and belief, Jefferson County has routinely failed to train and supervise its officers to check and/or otherwise verify that Protective Orders have been properly served before enforcing them.

62. Jefferson County Sheriffs have arrested at least one other person for violation of a Protection Order on March 13, 2016, who had, similarly, not been served with a Protection Order and did not have notice of the substance of the order before being arrested. The arresting officers involved were not disciplined for their failures.

63. Based on inferences drawn from the common methods used by the officers in each of the two circumstances where Plaintiff was charged, and other prior examples, Jefferson County Sheriff's Deputies do not routinely investigate whether protection orders have been served, and arrest in spite of evidence indicating that protection orders have not been served. The behavior appears to reflect a common practice of Jefferson County's deputies failing to establishing probable cause regarding service of protection orders before making arrests. Thus, there are likely additional examples of this behavior to be uncovered during discovery.

64. The Jefferson County Sheriff's Office does not employ written policies and procedures requiring its officers to verify that a protection order issued by a court has been properly served before making an arrest, even though such service is a predicate element of the commission of crimes in Colorado relating to 'violation of a restraining order.'

65. Defendant Jefferson County's failure to train, supervise, and implement appropriate policies/customs concerning the verification of proper service of protection orders was likely to lead to, and indeed led officers in this case to, deprive Michelle Bowman of her constitutional rights by causing an arrest for a crime Plaintiff could not possibly have knowingly committed.

66. The actions as described herein of the Defendant officers, under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to freedom from

unreasonable seizure as guaranteed by the Fourth Amendment to the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. §1983.

67. Defendant officers' and Defendant Jefferson County's acts and omissions proximately caused the deprivation of Plaintiffs' Constitutional rights and resulted in the physical, emotional, and other injuries identified above.

### SECOND CLAIM FOR RELIEF
*42 U.S.C. § 1983 Fourteenth Amendment Claim – Deliberate Indifference to Medical Necessity*
**(Against Defendants Custodio, Pesapane, and Feierstein)**

68. Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

69. While being detained in the jail, Defendant Deputies Custodio, Perapene, and Feierstein were assigned to Plaintiff's cell block and were responsible for her custody and care.

70. During her detention, Michelle Bowman complained to the Defendant Deputies of her mental health prescription needs and the growing infection on the tip of her nose.

71. The Defendant Deputies overheard and/or were told about Michelle Bowman's urgent phone call to her mother, during which she complained of her need for mental health medication and medical treatment regarding her nasal infection.

72. The Defendant Deputies saw evidence of Michelle Bowman's medical need for her prescriptions through Michelle Bowman's increasingly erratic and violent use of language in person and during her phone call to her mother.

73. The Defendant officers should have known that the behavior was caused

by their failure to provider her the needed mental health medication.

74. The Defendant Deputies also saw evidence of Michelle Bowman's urgent need for medical treatment by observation of the increasingly large, red, bulbous infection growing on the tip of Michelle Bowman's nose, which would have indicated to any reasonable person that she needed immediate medical treatment.

75. Yet none of the officers called for medical assistance to address Michelle Bowman's obvious medical needs, at any time over the course of 6-7 days that Michelle Bowman's mental health and physical medical conditions grew worse.

76. Instead of helping Michelle Bowman, the officers unreasonably asserted additional criminal charges against her for violation of the PO.

77. The actions as described herein of the Defendant Officers, while acting under color of state law, deprived Michelle Bowman of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to basic medical care while confined as a pretrial detainee, as guaranteed by the Fourth and/or Fourteenth Amendments, made actionable pursuant to 42 U.S.C. § 1983.

78. The conduct of the Defendants proximately caused Michelle Bowman to suffer days of unnecessary pain and suffering, mental illness, and emotional distress, that led to a second round of unwarranted criminal charges, and humiliation, without access to reasonable medical treatment and/or the prescriptions that could have addressed the conditions.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment in her favor and against all Defendants for compensatory damages, as referenced above, for punitive damages against all Defendants except the municipality, for equitable relief including declaratory relief, for interest as allowed by law, for costs, expert witness fees, and reasonable attorney fees as allowed by statute or as otherwise allowed by law, and for any other and further relief that this Court shall deem just and proper.

Respectfully submitted this 24th day of July, 2017.

Civil Rights Litigation Group, PLLC

*s/   Raymond K. Bryant*
Raymond K. Bryant
1391 Speer Blvd., Suite 705
Denver, CO 80204
P:  720-515-6165
F:  303-416-4246
Raymond@rightslitigation.com
